## Case No. 12,324.

### The SAN JOSE INDIANO.

[1 Mason, 38.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1815.

PRIZE—ORDER FOR FARTHER PROOF—SHIPMENTS.

In general the prize court will not trust a claimant with an order for farther proof, who has shown himself capable of abusing it. Every shipment remains on the account and risk of the shippers, unless there be an express or implied authority to change the proprietary interest, and put the shipment at the risk of the consignee. Defects of the case on farther proof, inflame suspicions. Circumstances leading to condemnation.

The farther proof ordered in this cause, as to invoices Nos. 1 and 2, part of the goods claimed by the master, being now brought in, the counsel of the respective parties were heard by the court. The circumstances attending this claim are fully stated in the opinion of the court, delivered at October term, 1814 [Case No. 12,322]. The nature of the farther proof, now produced, will appear in the opinion which follows.

Dexter & Pitman, for captors.

William Sullivan and Mr. Prescott, for claimants.

STORY, Circuit Justice. The only remaining claim, now to be decided, is that of the master, as to the property in the invoices Nos. 1 and 2, respecting which farther proof was ordered at October term, 1814. That order was made under very special circumstances; and if it can be reconciled at all with the rules of the prize court, it stands upon the very limits of the law. It was made in favor of a party, whose statements under oath were contradictory, and who was finally detected in an attempt to practise an imposition on the court by the cover and claim of property, which has been condemned as the property of enemies. The difficulties also of the claim, as to the invoices Nos. 1 and 2, were very serious, and were in part stated in the opinion, which was then delivered, and to which I again refer. The master was then personally present in court, and so strong were the solicitations of counsel in his behalf, as a foreigner, seeking the compassion of the court, and so earnest was their belief, that every explanation could be made by him to its entire satisfaction, that the indulgence was yielded after considerable doubt of its legal propriety. It is a clear rule of public justice, enforced for the most obvious reasons by prize courts, that a party shall not be trusted with an order for farther proof, who has already shown himself capable of abusing it. Under these circum-

[1] [Reported by William P. Mason. Esq.]

stances the party was put upon his utmost diligence; and was distinctly informed, that the clearest proof and documents would be expected, to relieve the claim from the weight, with which it was oppressed; and that the apparent contrarieties and singularities must be minutely explained.

The farther proof has now been brought in, and it consists altogether of a certificate of a Mr. Da Costa of Lisbon, not under oath; and of an affidavit of Mr. Da Costa of Liverpool, one of the firm of Da Costa, Guimaraens, & Co., the owners of the ship. The master himself has offered no supplemental affidavits or documents explaining the contrarieties in the case, or showing any funds or special circumstances, from which so large a shipment might have arisen. Nor can it be pretended, that he has, in these respects, acted under a mistake. Independent of the admonition of the court, there are now before me the written instructions of counsel, as to what was proper and necessary to be done; and these instructions were not only known to the master, but were transmitted to Messrs. Costa, Guimaraens, & Co. It was certainly to have been expected, that the master, before leaving the country, would have given his final explanation of the real transactions, minutely and fully; and that at least, after the lapse of a year, he would have produced some original documents, either to himself, or to his asserted partner in this transaction, that would have assisted in the verification of his claim. It is in proof, that such documents actually exist. The bills of lading of the invoices Nos. 1 and 2 are without signatures, and if there be not a mis-translation (as I suspect there is) in the consignment, the production of the originals, in the possession of the shippers, would have been some corroboration of the claim, especially if connected with the "letter of orders" referred to in the certificate of Mr. Da Costa of Lisbon.

This certificate, independent of its not being verified by oath, is essentially defective for every purpose of farther proof. In the claim of the master, two thirds of the shipment were claimed, as the property of the master, and one third as the property of Mr. Francisco Gaudencio Da Costa of Maranham. In the certificate it is nowhere averred, that Mr. Da Costa of Lisbon is the same person, as Mr. Da Costa of Maranham. It was certainly incumbent on the party to show this; and if a removal had taken place, to state at what time the event happened, and what was his real domicil at the time of shipment. If this gentleman had never lived at Maranham, or had removed before the shipment was made, it would have thrown great doubt upon the master's veracity; and in no possible view could it be an unimportant circumstance in clearing away difficulties. The certificate states, that the invoices annexed to it, "are faithfully copied from the respective original invoices of the merchandises therein specified, shipped at Liverpool on

board the San Jose Indiano, a Portuguese built vessel, and the property of a Portuguese, Ignacio Jose Felis master, bound for Rio de Janeiro, by Costa, Guimaraens, & Co. for account of the deponent, concerned in one third part of the capital and interest, and the other two third parts for account of the said captain of the same vessel, I. J. Felis, pursuant to the letter of orders given by the shippers to the above said captain; which said original invoices remain in his possession, together with their respective documents sent to him by the aforesaid shippers." This is the whole of the certificate. It is somewhat remarkable, that neither the originals, nor copies of these documents, and letter of orders, are produced, nor the time of their receipt mentioned by the claimant; nor does he pretend, that any authority or orders were given by him for the shipment; nor is there shown any correspondence, or course of trade, between himself and the shippers, from which an implied authority could be inferred. Consistently with the language of the certificate, the shipment might have been made without any authority express or implied, and without any interest in the claimant, except the nominal interest asserted in the papers. The letter, too, of the claimant, addressed to Mr. Sampayo (the agent for the ship and cargo in this court) which accompanied the certificate, shows in a very marked manner his utter ignorance of the whole transaction. He directs him in every thing to follow the instructions, that Messrs. Costa & Co. have given, relating to this business. The letter is. of itself, calculated to awaken the strongest suspicions; and, combined with the other circumstances, it cannot but raise a presumption, that Mr. Da Costa of Lisbon is but a dramatic personage, ushered into the scenes, to act a part for the benefit of the original shippers, or some other concealed hostile owner. It is sufficient, however, that the shipment does not appear to have been made in pursuance of any orders; and it is clearly settled, that every shipment remains on the account, and at the risk of the shippers, unless there be an express or implied authority to change the ownership of the property, and put it to the account, and at the risk of the consignee.

Equally unsatisfactory is the affidavit of Mr. Da Costa of Liverpool. It is a naked declaration, in general terms, and unaccompanied with a single original document. letter of orders, or statement, explanatory of the manner or circumstances, under which the shipment was made. Not a single difficulty, which appeared in the original papers, or in the account current, is attempted to be accounted for; though certainly it was peculiarly in the power of this gentleman, to have given the most ample and minute information.

Whether, therefore, we examine the proofs in the case, or the defects, which the parties have had an opportunity to supply, and have neglected to do it, the case now presents even stronger doubts, than accompanied it at the original hearing. A claimant, asserting rights and interests before a prize court, must make them out by competent and sufficient proofs. The onus probandi rests on him (The Walsingham Packet, 2 C. Rob. Adm. 77; The Countess of Lauderdale, 4 C. Rob. Adm. 283); and if he fail to relieve the court from legal doubts as to his title, condemnation must pass to the captors. There seems, indeed, but one way of explaining the almost total defect of evidence, to support the order of farther proof. And I think, that it is not a rash inference, that a minute disclosure of the facts, on the part of the claimants and shippers would not aid the asserted claim, or sustain the explanations heretofore made. From the defect of the proper proofs, I condemn the goods in the invoices Nos. 1 and 2, as good and lawful prize to the captors, with costs and expenses.

[On appeal to the supreme court, the decree of this court, as rendered in Case No. 12,322,. was affirmed. 1 Wheat. (14 U. S.) 208.]